UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAIL KING INDUSTRIES, INC., | 4:24-CV-04164-RAL |
| Plaintiff, | |
| | OPINION AND ORDER GRANTING IN PART AND DENYING IN PART UNITED STATES' MOTION TO DISMISS |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Trail King Industries, Inc. ("Trail King") is a South Dakota corporation based in Mitchell, South Dakota, that manufactures trailers. Doc. 3 at 1–2. Trail King brought this action against the United States seeking a refund of $4,022,068.03 in federal excise taxes that Trail King claims were erroneously assessed under 26 U.S.C. § 4051(a) on sales of Trail King's Advantage Series OLB Live Bottom Trailers ("OLB Trailers") for the taxable quarters ending March 31, 2017, through June 30, 2019 (the "Taxable Quarters at Issue"). Id. The United States moved to dismiss Trail King's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Doc. 17. For the following reasons, the United States' motion is granted in part and denied in part.

I.      **Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Neitzke v. Williams, 490 U.S. 319, 326–27 (1989). When considering a Rule 12(b)(6) motion, the facts alleged in the complaint must be considered true, and all inferences must be drawn in favor

of Trail King, the nonmoving party. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 465 (8th Cir. 2002)). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' . . . a claim must be dismissed." Neitzke, 490 U.S. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). A district court considering a motion to dismiss under Rule 12(b)(6) usually draws the facts from the complaint, materials that are embraced by the complaint, matters of public record, and items subject to judicial notice. See Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013). "[M]aterials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017).

Trail King has attached several documents to their filings: a Technical Advice Memorandum attached to the Complaint, Doc. 3-1, and a Form 4564 requesting resale exemption certificates, and a Form 886-A explaining proposed adjustments to Trail King's excise tax assessment attached to an opposition brief. Doc. 17-1. The United States attached three Amended Quarterly Federal Excise Tax Returns (Form 720-X) covering the Taxable Quarters at Issue to its reply. Doc. 22-1. The contents of these documents are embraced by the Complaint and thus proper to consider in deciding the United States' Motion to Dismiss.

**II.      Factual Allegations in the Complaint and Statutory Background**

### A. Federal Excise Tax Under 26 U.S.C. § 4051(a)

The Internal Revenue Code ("the Code") imposes a 12% excise tax on the first retail sale of "[t]ruck trailer and semitrailer chassis" and "[t]ruck trailer and semitrailer bodies." 26 U.S.C. § 4051(a)(1). Empowered by 26 U.S.C. § 7805(a), the Secretary of the Treasury promulgated regulations specifying that a semitrailer chassis or body is subject to the 12% excise tax "only if such chassis or body is sold for use as a component part of a highway vehicle (as defined in [Treas. Reg. § 48.4061(a)-1(d)])." Temp. Treas. Reg. § 145.4051-1(a)(2). Treas. Reg. § 48.4061(a)-1(d)(1) defines "highway vehicle" as "any self-propelled vehicle, or any trailer or semitrailer, designed to perform a function of transporting a load over public highways, whether or not also designed to perform other functions." The regulation also excludes certain trailers and semitrailers from the definition of a highway vehicle, including trailers or semitrailers specially designed for off-highway transportation. Treas. Reg. § 48.4061(a)-1(d)(2)(ii). The regulation further defines an off-highway vehicle as one that is: (1) "specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations," and (2) "if by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired." Id. Whether a vehicle meets the second criterion depends on various factors: (1) "whether the vehicle may travel at regular highway speeds," (2) whether the vehicle "requires a special permit for highway use," (3) whether the vehicle "is overweight, overheight or overwidth for regular use," and (4) "any other relevant considerations." Id.

In 2004, Congress passed the American Jobs Creation Act ("AJCA"), which enacted a statutory definition of an off-highway vehicle, different from the definition found at Treas. Reg.

3

§ 48.4061(a)-1(d)(2)(ii) and made the definition applicable to the excise tax in § 4051(a) starting October 22, 2004. See 26 U.S.C. § 7701(a)(48). Accordingly, the definition of an off-highway vehicle found in 26 U.S.C. § 7701(a)(48) superseded the definition found in Treas. Reg. § 48.4061(a)-1(d)(2). See Myles Lorentz, Inc. v. Comm'r, 138 T.C. 40, 44 n.9 (2012) (applying § 7701(a)(48)(A)'s definition of off-highway vehicle for tax year ending on January 31, 2006). Under 26 U.S.C. § 7701(a)(48)(A)(i), "[a] vehicle shall not be treated as a highway vehicle if such vehicle is specially designed for the primary function of transporting a particular type of load other than over the public highway and because of this special design such vehicle's capability to transport a load over the public highway is substantially limited or impaired." The statute further provides that "a vehicle's design is determined solely on the basis of its physical characteristics," and that various factors should be taken into account to determine whether the vehicle's capability to transport a load over the public highway is substantially limited or impaired. 26 U.S.C. § 7701(a)(48)(A)(ii)-(iii). The factors include: (1) "the size of the vehicle"; (2) "whether such vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles"; and (3) "whether such vehicle can transport a load at a sustained speed of at least 25 miles per hour." 26 U.S.C. § 7701(a)(48)(A)(iii).

Although similar, the AJCA's definition differs from the regulation's definition in several ways:

- the change of the phrase "such load" to the more general "a load";
- a vehicle's design is determined solely on the basis of its physical characteristics;
- the listed considerations for substantial limitation or impairment are now the size of the vehicle, whether such vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles, and whether such vehicle can transport a load at a sustained speed of at least 25 miles per hour; and
- the ability of a vehicle to transport a greater load off the public highway than such vehicle is permitted to transport over the public highway is immaterial

Myles Lorentz, Inc., 138 T.C. at 49 (cleaned up and citations omitted). The United States Tax Court in Myles Lorentz, Inc. v. Commissioner observed that the statute's definition is "less liberal" than the regulation's. Id. at 51. Thus, beginning on October 22, 2004, the applicability of the off-highway exemption to the 12% excise tax in § 4051(a) turned on the AJCA's more restrictive definition of "off highway vehicle."

### B. 2004 Technical Advice Memorandum

In 2003, Trail King and an Internal Revenue Service ("IRS") exam team as part of an audit requested technical assistance from the IRS Office of Associate Chief Counsel on whether Trail King's sales of OLB Trailers were subject to the federal excise tax under 26 U.S.C. § 4051(a). Doc. 3 at 4. On November 1, 2004, ten days after the passage of the AJCA, the IRS issued a technical advice memorandum ("2004 TAM") finding that Trail King's OLB Trailer sales were exempt from the federal excise tax under § 4051 for the quarterly taxable period ended March 31, 2001 through the quarterly taxable period ended September 30, 2002, because the OLB Trailers were not "highway vehicles" as defined in Treas. Reg. § 48.4061(a)-1(d). Doc. 3-1. The 2004 TAM did not discuss § 7701(a)(48)(A), which was passed ten days prior to the 2004 TAM's issuance. Relying on the 2004 TAM, Trail King continued to apply the "off-highway" exemption to sales of the OLB trailers in subsequent tax years. Doc. 3 at 5.

### C. 2019 Audit[1]

In 2019, the IRS conducted an audit of Trail King's quarterly excise tax returns for the Taxable Quarters at Issue. Doc. 3 at 2. IRS Revenue Agent Bryan Brosious ("Agent Brosious") sent Trail King a Form 886-A proposing adjustments increasing Trail King's federal excise taxes

---

[1] Trail King's complaint does not contain as much detail as is in this section, but Trail King's case centers on the 2019 audit and its aftermath. The information in this section is drawn from materials that Trail King's complaint embraces and that Trail King does not contest.

pursuant to 26 U.S.C. § 4051(a) on the sale of OLB Trailers during the Taxable Quarters at Issue. Id.; Doc. 21-1 at 9. Agent Brosious wrote that Trail King "incorrectly applied the 'off-highway' exemption on the . . . OLB Trailers, and has not collected [federal excise tax] on the sale of such trailers in accordance with the applicable Code, Regulations, and Rulings." Doc. 21-1 at 4. Agent Brosious observed that Trail King "relied on the [2004 TAM] in support of their position of not collecting [federal excise tax] on the OLB Trailers," and that since the issuance of the 2004 TAM, "there has . . . been enactment of new legislation, and issuance of regulations which more clearly define 'off-highway' vehicles." Id. Agent Brosious wrote that the OLB Trailers "do not meet the current definition and standard of off-highway vehicles in [§] 7701(a)(48)," that the OLB Trailers "are subject to the [§] 4051 tax on their first retail sale for vehicles sold on or after October 22, 2004, and the case law and regulations of the [2004 TAM] are no longer the standard." Id. at 8. Trail King alleges the proposed adjustments also allowed for a tire tax credit under 26 U.S.C. § 4051(d). Doc. 3 at 2.

Agent Brosious further stated that Trail King did not comply with the requirements for a resale exemption under § 4052 because Trail King did not obtain resale exemption certificates at or before the time of sales of its OLB Trailers. Doc. 21-1 at 4. Trail King was relying on the 2004 TAM and thus did not think it necessary to secure such resale exemption certificates at or before its sales of OLB Trailers. Doc. 3 at 5. Agent Brosious gave Trail King thirty days to "secure certificates, retroactively if needed, for all exempt sales during the quarter 201703." Doc. 21-1 at 8. Agent Brosious acknowledged that certificates are "required to be obtained at or before the time of the exempt sale, but a special allowance is being given in this circumstance allowing the Taxpayer to attempt to retroactively secure a certificate covering the exempt purchases for the quarter." Id. Agent Brosious extended the "special allowance" to all the Taxable Quarters at Issue,

writing "[t]he agent is also giving the special certificate provision in which the Taxpayer is given allowance to secure, retroactivity [sic] if necessary, reseller and exemption certificates for the periods of 201703–201906." Id. at 9.

Trail King then obtained and submitted to the IRS exemption certificates from its dealers that accounted for 86% of all OLB Trailer sales during the Taxable Quarters at Issue. Doc. 3 at 5. However, the IRS exam team "reversed course" and disregarded the exemption certificates. Id. The IRS then assessed $3,220,801.55 in federal excise taxes on the sales of the OLB Trailers. Id. at 6. The IRS additionally withheld $74,400 from refund payments, representing tire tax credits available to Trail King under § 4051(d). Id. The IRS assessed an additional $726,866.48 in interest and penalties. Id.

On February 6, 2020, Trail King protested the proposed adjustments, and the matter was referred to the IRS Independent Office of Appeals ("Appeals Office"). Id. The Appeals Office offered Trail King a $16,000 settlement, which Trail King rejected. Id. at 7. The Appeals Office closed the case as unagreed on April 28, 2023. Id. at 7. To satisfy a prerequisite for filing a refund action in federal court,[2] Trail King paid the federal excise taxes with penalties and interest on June 1, 2023, and applied the tire tax credits available under § 4051(d). Id. On September 11, 2023, the IRS assessed the disputed federal excise taxes and applied Trail King's June 1, 2023 payment to the assessed amount. Id. at 2. On September 12, 2023, October 24, 2023, and November 7, 2023, the IRS refunded Trail King approximately $533,637 for overpaid interest and penalties but

---

[2] There are three prerequisites to filing a refund action in federal court. First, "a taxpayer must pay his outstanding tax liability in order to maintain jurisdiction in district court." Barse v. United States, 957 F.3d 883, 886 (8th Cir. 2020) (citing Flora v. United States, 362 U.S. 145, 177 (1960)). Second, a taxpayer must have made a timely administrative claim with the IRS. 26 U.S.C. § 7422(a). Finally, "the administrative claim must be either disallowed or not acted upon within six months after it was filed with the IRS." Roberts v. United States, 242 F.3d 1065, 1067 (Fed. Cir. 2001) (citing 26 U.S.C. § 6532(a)(1)).

reduced from the amount tire tax credits for certain periods which Trail King had applied pursuant to § 4051(d) for a net refund of $483,875.  Id. at 2–3.  On December 28, 2023, the IRS assessed an additional $102,769 against Trail King, but no explanation is given on what this figure represents.  Id. at 3.  Trail King subsequently filed with the IRS three Amended Quarterly Federal Excise Tax Returns (Form 720-X) in March 2024, claiming refunds for the amounts paid, factoring in the tire tax credits ("Refund Claims").  Id. at 7; Doc. 22-1 at 3, 19, 35.  To date, the IRS has not formally disallowed the Refund Claims, id. at 3, and thus, Trail King could timely bring a refund action in federal court.  See 26 U.S.C. § 6532(a)(1).

On September 10, 2024, Trail King filed its Complaint seeking a refund of the federal excise taxes assessed on the sales of OLB Trailers for the Taxable Quarters at Issue, plus the withheld tire tax credit and any penalties and interest.  Doc. 3 at 1, 6.  Trail King's complaint contains sections alleging jurisdiction and the background facts.  Id. at 1–7.  Trail King then alleges ten separate counts for each of the ten Taxable Quarters at Issue.  Id. at 7–11.  Trail King's brief elaborates on its legal theories, though it is the Complaint upon which this Court focuses to determine if causes of actions are stated.  The Complaint does not allege separate counts for the IRS ignoring the 2004 TAM, waiving the AJCA changes or need for timely resale certificates, being estopped from seeking taxes or penalties, or enforcing regulations in a way contrary to Loper Bright, though the general allegations of the Complaint read literally provide factual support for such theories.  Id. at 2–11.  Trail King's principal argument in its brief is that the United States disregarded in contravention of IRS Revenue Procedures the "binding" 2004 TAM that concluded the OLB Trailers were not subject to the federal excise tax under § 4051(a) in certain taxable periods in 2001 and 2002.  Doc. 21 at 14–21.  Trail King further argues that the OLB Trailer sales at issue are exempt from federal excise taxes under § 4051(a) because the sales do not meet the

8

definition of "first retail sales" found in 26 U.S.C. § 4052 as evidenced by the resale exemption certificates and that the IRS waived timing requirements for obtaining the certificates. Id. at 21. Finally, Trail King argues that the United States is estopped from collecting federal excises taxes on the sales of the OLB Trailers. Id. at 36.

The United States filed its Rule 12(b)(6) motion to dismiss, arguing the 2004 TAM is not binding on the IRS because it was limited to tax periods in 2001 and 2002 and that its conclusions were modified or revoked by the enactment of the AJCA. Doc. 18 at 9. The United States further argues that, under the variance doctrine, this Court lacks jurisdiction to hear Trail King's arguments regarding the resale exemption, and that even if this Court did have jurisdiction over the claims, Trail King failed to comply with regulations that prescribe rules for claiming the exemption. Doc. 22 at 8. Finally, the United States argues that Trail King failed to sufficiently plead an estoppel claim. Doc. 18 at 35–37.

## III. Discussion

### A. Reliance on the 2004 TAM

Trail King's Complaint in each of its ten counts—one for each quarter between March 31, 2017, and June 30, 2019—alleges it was entitled to rely on the 2004 TAM which concluded that the OLB Trailers were not subject to the federal excise tax under § 4051(a). Doc. 3 at 7–16. Trail King argues that the conclusions of the 2004 TAM have not been revoked and the United States contravened its own Revenue Procedures by assessing the federal excise tax. Doc. 21 at 11.

A technical advice memorandum ("TAM") is "a written statement issued by the [National Office of IRS Office of Chief Counsel] to, and adopted by, a [IRS] district director in connection with the examination of a taxpayer's return or consideration of a taxpayer's claim for refund or credit." Treas. Reg. § 301.6110-2(f). A TAM is issued "upon request of a district office in

9

connection with the examination of a taxpayer's return or consideration of a taxpayer's return claim for refund or credit," Treas. Reg. § 601.105(b)(5), and "generally recites the relevant facts, sets forth the applicable law, and states a legal conclusion" regarding the issues for which assistance is sought, Treas. Reg. § 301.6110-2(f). A TAM "represents an expression of the views of the [IRS] as to the application of law, regulations, and precedents to the facts of a specific case, and is issued primarily as a means of assisting district officials in the examination and closing of the case involved." Treas. Reg. § 601.105(b)(5)(viii)(a). A TAM "may not be cited as precedent." Bergman v. United States, 174 F.3d 928, 930 n.5 (8th Cir. 1999); see also Treas. Reg. § 6110(k)(3).

The process for requesting a TAM is set forth in the IRS's Revenue Procedure. Rev. Proc. 2004-2; see also Treas. Reg. § 601.105(b)(5). "A Revenue Procedure is a statement of procedure that affects the rights or duties of taxpayers or other members of the public under the Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge." Treas. Reg. § 601.601(d)(2)(b). The Revenue Procedure also "explains the rights a taxpayer has when a director or an appeals area director requests technical advice." Rec. Proc. 2004-2. Revenue Procedure 2004-2 was in force when the IRS issued the 2004 TAM regarding Trail King's tax refunds.[3]

Once a TAM is issued, "[t]he director or the appeals area director must process the taxpayer's case on the basis of the conclusions in the TAM." Rev. Proc. 2004-2, § 14.01. A favorable holding in the TAM is applied retroactively. Id. at § 15.02; Treas. Reg. § 601.105(b)(5)(viii)(b). When a TAM relates to a continuing action or a series of actions, the TAM

---

[3] Rev. Proc. 2004-2 has since been superseded, and Rev. Proc 2025-2 provides the current procedural guidance.

applies until the TAM is "specifically withdrawn or until the conclusion is modified or revoked by the enactment of legislation, the ratification of a tax treaty, a decision of the United States Supreme Court, or the issuance of regulations (temporary or final), a revenue ruling, or other statement published in the Internal Revenue Bulletin." Rev. Proc. 2004-2, § 15.04. Thus, "a taxpayer that is subject to a particular TAM is entitled to rely on the IRS's position in the TAM until that holding is withdrawn, revoked, or modified." NetJets Large Aircraft, Inc. v. United States, 80 F. Supp. 3d 743, 758 (S.D. Ohio 2015).

The 2004 TAM determined that for certain taxable periods in 2001 and 2002, Trail King's sales of the OLB Trailers were not subject to the federal excise tax under § 4051(a). Doc. 3-1. The 2004 TAM's determination was based on the law that was in effect during the taxable periods in 2001 and 2002. The then-applicable definition of off-highway vehicle was found in Treas. Reg. § 48.4061(a)-1(d)(2)(ii). Despite enactment of the AJCA ten days prior to the issuance of the 2004 TAM, the 2004 TAM did not address the AJCA's definition found at 26 U.S.C. § 7701(a)(48) nor did it need to because the AJCA's definition was not in effect for the relevant periods for which the 2004 TAM was sought. Assuming that Trail King's sales of the OLB Trailers beyond the taxable periods in 2001 and 2002 constituted a "continuing action or a series of actions," Trail King was entitled to rely on the 2004 TAM's conclusion until it was "specifically withdrawn or until the conclusion [was] modified or revoked by the enactment of legislation, the ratification of a tax treaty, a decision of the United States Supreme Court, or the issuance of regulations (temporary or final), a revenue ruling, or other statement published in the Internal Revenue Bulletin." Rev. Proc. 2004-2, § 15.04.

Trail King correctly observes that the 2004 TAM "was never modified, withdrawn, or revoked *by the IRS.*" Doc. 21 at 18 (emphasis added) (cleaned up and citation omitted). But the

11

question is whether the enactment of the AJCA on October 22, 2004, modified the 2004 TAM's conclusion such that the TAM would not apply for quarters after the AJCA's passage. The AJCA enacted a definition of "off-highway vehicles" different from the definition found in Treas. Reg. § 48.4061(a)-1(d)(2)(ii) and applied in the 2004 TAM. As noted by the United States Tax Court in Myles Lorentz, Inc. v. Commissioner, there are several differences between the two definitions with the AJCA's definition being more restrictive. Myles Lorentz, Inc., 138 T.C. at 49. Because the enactment of the AJCA modified the 2004 TAM's conclusion for quarters to which the AJCA applies, the 2004 TAM cannot supersede the AJCA's definition change or render the AJCA definition change inapplicable to Trail King.

Trail King cites to NetJets Large Aircraft, Inc. v. United States for the proposition that Trail King was entitled to rely on the 2004 TAM. In NetJets Large Aircraft, Inc., the IRS sought to retroactively assess the excise tax under 26 U.S.C. § 4261 on certain fees for transportation services charged by the company, in contradiction of a TAM issued in 1992 that concluded the fees were not subject to the tax. 80 F. Supp. 3d at 751. The court held that NetJets was entitled to rely on the 1992 TAM, and because the IRS had not modified, withdrawn, or revoked the 1992 TAM, the IRS could not retroactively assess the § 4261 tax to the fees. Id. at 758. NetJets Large Aircraft, Inc. materially differs from the case here because there was no intervening enactment of legislation that impacted the legal conclusions in the 1992 TAM. Here, the enactment of the AJCA changed the definition of off-highway vehicle that the 2004 TAM addressed. Unlike the plaintiffs in NetJets Large Aircraft, Inc., Trail King's reliance on the previously issued TAM—while it might justify avoiding penalties—does not insulate Trail King from the effect of the legal change in the AJCA.

Trail King argues that the 2004 TAM could not have been revoked by legislation enacted before the 2004 TAM's issuance. Doc. 21 at 18–19. Trail King cites Rev. Proc. 2004-2, § 15.04 which states a TAM related to a continuing action applies "until specifically withdrawn or until the conclusion is modified or revoked." Trail King suggests that Rev. Proc. 2004-2, § 15.04's use of "until" means the AJCA could not have modified or revoked the conclusion of the 2004 TAM which came after the enactment of the AJCA. Id. Although the 2004 TAM was issued ten days after the enactment of the AJCA, the 2004 TAM was backwards looking, applying to taxable periods in 2001 and 2002. Its conclusion that the OLB Trailers were off-highway vehicles exempt from the federal excise tax under § 4051(a) was based on a definition of such vehicles predating the AJCA. Accordingly, the 2004 TAM's conclusion as to the applicable law in 2001 and 2002 does not supersede the AJCA. To the extent Counts One through Ten are based on that theory, they fail to state claims. However, each of those counts, and much of the Complaint, alleges more.

### B. Resale Exemption

In each of its ten counts, Trail King alleges that it "was entitled to . . . apply the 'off-highway' exemption to its sales of the OLB Trailers" during the Taxable Quarters at Issue and is entitled to a refund of assessed taxes and penalties. Doc. 3 at 7–11. Trail King argues that the OLB Trailer sales at issue are exempt from the federal excise taxes under § 4051(a) because the sales do not meet the definition of "first retail sales" found in 26 U.S.C. § 4052. Doc. 21 at 13–18. The Code imposes a 12% excise tax on the *first retail sale* of "[t]ruck trailer and semitrailer chassis" and "[t]ruck trailer and semitrailer bodies." 26 U.S.C. § 4051(a)(1) (emphasis added). Section 4052 defines "first retail sale" as "the first sale, for a purpose other than for resale or leasing in a long-term lease, after production, manufacture, or importation." 26 U.S.C. § 4052(a)(1). "Under this scheme, manufacturers and importers [are] exempt from excise tax on

[trailers] sold to their dealers for resale, and their dealers would pay the tax." <u>Volvo Trucks of N.</u>
<u>America, Inc. v. United States</u>, 367 F.3d 204, 206 (4th Cir. 2004).

> Section 4052(g) provides:

> The Secretary shall prescribe regulations which permit, in lieu of any other
> certification, persons who are purchasing articles taxable under this subchapter for
> resale or leasing in a long-term lease to execute a statement (made under penalties
> of perjury) on the sale invoice that such sale is for resale. The Secretary shall not
> impose any registration requirement as a condition of using such procedure.

Pursuant to § 4052(g), the Treasury promulgated Treas. Reg. § 48.4052–1, which provides that
federal excise taxes under § 4051(a) are "not imposed . . . on the sale of [a trailer] for resale" if,
by the time of the sale, the seller accepts written certification from the buyer that the trailer is
purchased for resale. The certificate must be in "substantially the same form, and subject to the
same conditions" as the certificate described in Treas. Reg. § 145.4052-1(a)(6). Treas. Reg.
§ 48.4052–1. Thus, Treas. Reg. § 48.4052-1(a) exempts from the federal excise tax under
§ 4051(a) sales of trailers if the seller obtains, by the time of the sale, resale exemption certificates
from its buyer that comply with certification requirements and indicate that the sales were for
resale.

Trail King contends that none of its OLB sales were "first retail sales" under § 4052. Doc.
21 at 21. Trail King has not alleged that it obtained resale exemption certificates at or before the
time of the sales as required by Treas. Reg. § 48.4052-1(a) to qualify for the resale exemption.
Rather, Trail King obtained resale exemption certificates from its dealers that accounted for 86%
of all OLB Trailer sales during the Taxable Quarters at Issue after the sales were made upon request
by Agent Brosious as a "special allowance" given Trail King's reliance to that point on the 2004
TAM. Doc. 3 at 5. Based on these allegations alone, Trail King would be ineligible for the resale
exemption under Treas. Reg. § 48.4052-1(a) which requires certificates "by the time of the sale."
<u>See</u> <u>Rogue Truck Body, LLC v. United States</u>, No. 1:13–cv–00265, 2014 WL 5511095, at *5 (D.

Or. Oct. 30, 2014) (finding truck sales did not qualify for resale exemption where seller failed to comply with Treas. Reg. § 48.4052-1(a)). However, Trail King argues that the Secretary of the Treasury exceeded its regulatory authority under §§ 4051 and 4052 by promulgating Treas. Reg. § 48.4052-1(a) and that the regulation is invalid under <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369 (2024). <u>Id.</u> at 21–26. Trail King further alleges that even if Treas. Reg. § 48.4052-1(a) is valid, its requirements were waived when Agent Brosious offered Trail King a "special allowance" to obtain resale exemption certificates. <u>Id.</u> at 28.

The United States first asserts that Trail King failed to satisfy the resale exemption's requirements under Treas. Reg. § 48.4052-1(a). The United States further argues that this Court lacks jurisdiction under the variance doctrine to consider Trail King's <u>Loper Bright</u> challenge and argument that the IRS waived Treas. Reg. § 48.4052-1(a)'s requirements because Trail King failed to raise these arguments before the IRS. Doc. 22 at 17–18. Even if this Court has jurisdiction, the United States argues that the Secretary of the Treasury had statutory authority to adopt Treas. Reg. § 48.4052-1(a). <u>Id.</u> at 23. Finally, the United States asserts that Treas. Reg. § 48.4052-1(a)'s requirements could not be waived. <u>Id.</u> at 29. This Court begins with the challenge to its jurisdiction under the variance doctrine.

### 1. Variance Doctrine

The variance doctrine is a bar to a court's jurisdiction. <u>See</u> <u>Muskat v. United States</u>, 554 F.3d 183, 195 (1st Cir. 2003) (holding district court lacked subject matter jurisdiction over refund claim under variance doctrine). Thus, this Court will treat the United States' challenge on this point as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. A challenge to subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual in nature. <u>Osborn v. United States</u>, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional

attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Communs., LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

In contrast, where a factual attack is made on the court's subject matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730. Here, the United States argues that this Court lacks subject matter jurisdiction over Trail King's challenge to Treas. Reg. § 48.4052-1(a)

under Loper Bright and its argument that the IRS waived the requirements of Treas. Reg. § 48.4052-1(a) because Trail King failed to raise these grounds for relief in its Refund Claims. This is a factual challenge to subject matter jurisdiction, so this Court may consider matters outside of the pleadings. See Eagle v. United States, 692 F. Supp. 3d 864, 872 (D.S.D. 2023).

A taxpayer may not file a refund action in federal court "until a claim for refund or credit has been duly filed with the Secretary." 26 U.S.C. § 7422(a). Moreover, a claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). Derived from these rules is the variance doctrine which "prevents a taxpayer from appealing a refund denial on a different ground than asserted before the IRS." IA 80 Grp., Inc. and Subsidiaries v. United States, 347 F.3d 1067, 1074 (8th Cir. 2003). Treas. Reg. § 301.6402–2(b)(1) "distinguishes between the ground for the claim—that is, the legal theory upon which the refund is claimed—and facts sufficient to apprise the Commissioner of the exact basis thereof." Lockheed Martin v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (cleaned up and citation omitted). "A ground for refund neither specifically raised by, nor included within the general language of, a timely claim for refund cannot be considered by a court in which a suit for refund is subsequently initiated." First Nat'l Bank of Fayetteville v. United States, 727 F.2d 741, 744 (8th Cir.1984); see also Lockheed Martin, 210 F.3d at 1371 ("[A]ny legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated."). Similarly, a taxpayer "may not substantially vary at trial the factual bases raised in the refund claims presented to the IRS." Lockheed Martin, 210 F.3d 1366 at 1371. Accordingly, "a taxpayer's administrative claim must be specific." IA 80 Grp., Inc. and Subsidiaries, 347 F.3d at 1074. "A claim is sufficiently specific if the basic issue is evident from

17

the record, and the IRS is aware of the nature of the claim." Id. Setting forth a sufficiently specific claim advances the underlying purposes for which the variance doctrine exists: (1) "give adequate notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination"; (2) "provide the [IRS] with an opportunity to correct any errors"; and (3) "limit the scope of any ensuing litigation to those issues which have been examined." Id. (cleaned up and citation omitted). Despite the need for specificity, Treas. Reg. § 301.6402-2(b)(1) does "not require the strictness of common-law pleading or criminal indictment but only require[s] that the statement of facts be reasonably sufficient to make the Commissioner aware of the nature of the claims; the specific legal formulations of these claims need not be made." Am. Nat. Bank & Tr. Co. v. United States, 594 F.2d 1141, 1143 n.1 (7th Cir. 1979).

Trail King's Refund Claims, as summarized in Trail King's surreply, assert five grounds for a refund:

1. The assessment of the section 4051 tax, penalty, and interest was erroneous, and that the section 4051 tax was illegal under the tax law, including because the TAM was binding upon the IRS ("Ground 1");
2. Additional illegal assessments of the section 4051 tax were made without notice to Trail King ("Ground 2");
3. The IRS illegally did not allow for the Tire Tax Credit as permitted it under section 4051(d) ("Ground 3")
4. The solicited, obtained, and delivered Certificates regarding the Certified Sales should be accepted and no section 4051 tax should be imposed on those sales ("Ground 4"); and
5. The IRS abused its discretion under the common law and the Administrative Procedure Act by not following the TAM, by illegally assessing additional amounts, by withholding the Tire Tax Credits without explanation, and by withdrawing its formal offer after receiving the Certificates ("Ground 5")

Doc. 25 at 12; see also Doc. 22-1. Grounds 1 and 2 more generically challenge the assessments. Of the remaining grounds, only Grounds 4 and 5 address the applicability of the resale exemption. Ground 4 requests that the "retroactively obtained exemption certificates be accepted," while

Ground 5 asserts that the IRS's decision not to honor the resale exemption certificates after requesting them was "arbitrary, unreasonable and capricious conduct" and should be set aside under the Administrative Procedures Act. Doc. 22-1 at 6.

None of the grounds challenge the validity of Treas. Reg. § 48.4052-1. Trail King's challenge to the Treasury's authority to promulgate Treas. Reg. § 48.4052-1 is "an entirely new theory, neither mentioned in nor adumbrated by the administrative claim." Muskat, 554 F.3d at 195. Trail King concedes that it "did not explicitly identify the issue of invalidity in its March 2024 refund claims." Doc. 25 at 17. Instead, Trail King argues that "the IRS was directly aware of the key fact underlying Trail King's argument based on invalidity" given the fact that the IRS solicited resale exemption certificates. Id. at 18. However, Treas. Reg. § 301.6402–2(b)(1) requires that a taxpayer apprise the IRS of both facts *and* grounds for relief.

Trail King further argues that "the IRS had preemptively rejected Trail King's invalidity argument because it was prohibited by its own rules from considering that issue." Id. Trail King cites to 87 Fed. Reg. 55934, a proposed rule that was finalized in substantially the same form at Treas. Reg. §§ 301.7803-2 and 301.7803-3 on January 20, 2025, several months after Trail King submitted its Refund Claims. Id. Trail King specifically points to proposed § 301.7803–2(c)(19) which reads in part, "[Appeals Office] consideration is not available for any issue based on a taxpayer's argument that a Treasury regulation is invalid unless there is an unreviewable decision from a Federal court invalidating the regulation as a whole or the provision in the regulation that the taxpayer is challenging." 87 Fed. Reg. 55934, 55942. Trail King also cites to provisions of the Internal Revenue Manual, specifically IRM 8.1.1.3.1(5) and IRM 4.51.4.4.3(2)(h), which deal with the authority of the Appeals Office to hear certain claims.

19

Setting aside the fact that the proposed rule did not carry the force of law at the time Trail King submitted the Refund Claims, the proposed rule and Internal Revenue Manual provisions have no bearing here. A claim stating all grounds for a refund must be raised with the IRS in the first instance. 26 U.S.C. § 7422(a); Treas. Reg. § 301.6402–2(b). Upon rejection of the claim by the IRS, or the expiration of six months following the filing of the claim, the taxpayer can file a refund action in either district court or the United States Court of Federal Claims. 26 U.S.C. § 6532(a)(1); 28 U.S.C. § 1346(a). The taxpayer does not appeal the rejected claim to the Appeals Office. See Treas. Reg. § 601.103(c)(3) (setting out the procedure for filing a refund claim); Treas. Reg. § 601.106(d)(2)(iii) (stating that "[t]axpayers desiring to further contest unagreed excise . . . tax cases" must file suit in district court "upon disallowance of claim or after 6 months from date claim was filed"). The proposed rule and Internal Revenue Manual provisions cited by Trail King limit only the Appeals Office from considering challenges to the validity of Treasury regulations. They of course do not limit a district court's ability to hear a challenge to a Treasury regulation's validity. The only limitation to a district court's ability to hear a refund claim is that all grounds for relief be raised with the IRS in the first instance. Treas. Reg. § 301.6402–2(b). Accordingly, the IRS did not "preemptively reject[] Trail King's invalidity argument," and Trail King was required to raise its challenge to the validity of Treas. Reg. § 48.4052-1 in the first instance with the IRS. It did not do so.

Finally, Trail King argues that because the Supreme Court issued Loper Bright after Trail King filed its Refund Claims, this Court should decline to apply the variance doctrine. Doc. 25 at 18–19. Trail King is challenging the Treasury's authority to promulgate Treas. Reg. § 48.4052-1. Despite the fact that Loper Bright issued after Trail King filed its Refund Claims, Trail King was not precluded from challenging the Treasury's authority to issue Treas. Reg. § 48.4052-1 when it

filed the Refund Claims. The majority in <u>Loper Bright</u> overruled <u>Chevron U.S.A. Inc. v. Nat. Res.</u>
<u>Def. Council, Inc.</u>, 467 U.S. 837 (1984), thereby discarding a 40-year history under the <u>Chevron</u>
doctrine of giving deference to federal agencies in interpreting statutes they administer and instead
clarifying that federal courts possessed unfettered authority to resolve ambiguities in such statutes.
<u>Loper Bright</u> did not create a new claim for litigants like Trail King to challenge agency authority
to promulgate regulations. Indeed, even during the <u>Chevron</u> era, courts found agencies exceeded
their statutory authority in promulgating certain regulations. <u>See</u> <u>Util. Air Regul. Grp. v. EPA</u>,
573 U.S. 302, 333 (2014) (applying <u>Chevron</u> doctrine and holding that the EPA "exceeded its
statutory authority" in promulgating the Tailoring Rule). Rather, <u>Loper Bright</u> changed how courts
should evaluate already permissible challenges to the validity of regulations. Trail King could
have challenged Treas. Reg. § 48.4052-1 as exceeding the Treasury's statutory authority when it
filed the Refund Claims. It did not do so. Thus, under the variance doctrine, this Court now lacks
the jurisdiction to hear Trail King's challenge to the Treasury's authority to promulgate Treas.
Reg. § 48.4052-1.

The United States also argues that this Court lacks jurisdiction to consider Trail King's
argument that the IRS waived Treas. Reg. § 48.4052-1's requirements. Regulatory waiver occurs
when "(1) there is clear evidence that the Commissioner understood the claim that was made, even
though there was a departure in form in the submission, (2) it is unmistakable that the
Commissioner dispensed with the formal requirements and examined the claim, and (3) the
Commissioner took action upon the claim." <u>Brown v. United States</u>, 22 F.4th 1008, 1013 (Fed.
Cir. 2022). Ground 4 alleges that Agent Brosious formally advised Trail King that the IRS "would
make a 'special allowance' and permit [Trail King] to retroactively obtain resale/exemption
certificates . . . and would accept these certificates as proof that the OLB trailers were sold by

21

[Trail King] for resale." Doc. 22-1 at 6. In light of Agent Brosious's comments, Trail King sought to have the "special allowance" honored and collected certificates covering 86% of OLB Trailer sales during the Taxable Quarters at Issue. Doc. 3 at 5. Ground Four provided the IRS with sufficient notice of Trail King's argument that the IRS waived certain regulatory requirements. Although the Refund Claims did not explicitly use the word "waiver," Trail King's allegation that the auditor made a "special allowance" to receive resale exemption certificates *after* the sales amounts to an allegation that the IRS "dispensed with the formal requirements" of Treas. Reg. § 48.4052-1. Brown, 22 F.4th at 1013 (providing elements of regulatory waiver doctrine); see also American Nat. Bank & Trust Co., 594 F.2d at 1143 n.1 (stating that "specific legal formulations . . . need not be made). A waiver, after all, is a kind of "special allowance." Therefore, this Court has jurisdiction to consider the merits of Trail King's waiver argument and does so below.

### 2. Regulatory Waiver

The IRS may waive its own formal regulatory requirements for filing a refund claim. See Angelus Milling Co. v. Comm'r of Internal Revenue, 325 U.S. 293, 297 (1945). But where Congress "has made explicit statutory requirements [for filing a refund claim], they must be observed and are beyond the dispensing power of Treasury officials." Id. at 295. For example, the signature and verification requirements for filing a refund claim cannot be waived because they derive from 26 U.S.C. §§ 6061(a) and 6065. See Brown, 22 F.4th at 1012.

Absent an explicit statutory basis, certain regulatory requirements are subject to waiver. The basis of waiver, as established by the Supreme Court in Angelus Milling Co., "is that the Commissioner through his agents dispensed with the *formal requirements of a claim* by investigating its merits." 325 U.S. at 296 (emphasis added). Thus, not only must the requirement be purely regulatory, but it must also deal with the form or content of a refund claim. For example,

in Harper v. United States, the United States Court of Appeals for the Ninth Circuit held that the IRS waived Treas. Reg. § 301.6402-2(b)(1)'s requirement that a refund claim set forth in detail the grounds upon which a refund is sought. 847 Fed. Appx. 408, 410 (9th Cir. 2021); see also Goulding v. United States, 929 F.2d 329, 332 (7th Cir. 1991) (holding the IRS waived Treas. Reg. § 301.6402-2(b)(1)'s specificity requirement). And in Vensure HR, Inc. v. United States, the United States Court of Appeals for the Federal Circuit held that Treas. Reg. § 301.6402-2(e)'s requirement that certain refund claims be accompanied by a power of attorney was purely regulatory and thus, capable of being waived. 119 F.4th 7, 16 (Fed. Cir. 2024). Both Harper and Vensure involved regulations that impose a requirement on the form or content of a refund claim. See also Turks Head Club v. Broderick, 166 F.2d 877, 882 (1st Cir. 1948) ("The Commissioner may effectively waive certain requirements of his regulations as to the form and content of claims for refund.").

Here, Trail King argues that Treas. Reg. § 48.4052-1's requirement that a resale exemption certificate be obtained at or before the time of a sale is purely regulatory and capable of being waived. Section 48.4052-1(a) provides that federal excise taxes under § 4051(a) are "not imposed . . . on the sale of [a trailer] for resale" if, by the time of the sale, the seller accepts written certification from the buyer that the trailer is purchased for resale, and that the certificate be in "substantially the same form, and subject to the same conditions" as the certificate described in Treas. Reg. § 145.4052-1(a)(6). Section 48.4052-1(a) establishes that certain requirements must be met for sales of trailers to qualify for the resale exemption. Compliance with Treas. Reg. § 48.4052-1(a) impacts the merits of a refund claim, it does not establish formal requirements for properly filing the refund claim itself. Accordingly, it is not the type of regulation that the Supreme Court held could be waived in Angelus Milling Co. Indeed, no court has ever found the IRS to

23

have waived Treas. Reg. § 48.4052-1(a)'s requirements.  Ultimately, the requirements subject to waiver under Angelus Milling Co. are those that limit the IRS from assessing a refund claim to begin with, not those that dictate the outcome of an assessment.  Thus, the IRS did not waive Treas. Reg. § 48.4052-1(a)'s requirement that a resale exemption certificate be obtained at or before the time of a sale.  To the extent Trail King seeks a refund on the basis of the resale exemption, Trail King has failed to state a claim.

### C. Estoppel

Trail King argues that the United States is estopped from assessing the federal excise tax on the OLB Trailer sales.  While the contours of when an equitable estoppel claim may be made against the federal government are less than clear, the Supreme Court of the United States in Heckler v. Cmty Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 60 (1984), albeit in dicta, stated that a party "surely cannot prevail [on an estoppel claim against the United States] without at least demonstrating that the traditional elements of an estoppel claim are present."  In Heckler, the Court approvingly cited to the Restatement (Second) of Torts § 894(1) which provides the elements of an equitable estoppel defense:

> (1) If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act . . . the first person is not entitled
>> (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

Restatement (Second) of Torts § 894.  The United States Court of Appeals for the Eighth Circuit summarized the traditional elements of an estoppel claim as: "(1) a false representation by the government; (2) government intent to induce the claimant to act on the misrepresentation; (3) a lack of knowledge or inability to obtain true facts on the part of the claimant; and (4) the claimant's reliance on the misrepresentation to his detriment."  Bartlett v. U.S. Dep't of Agric., 716 F.3d 464,

475 (8th Cir. 2013) (cleaned up and citation omitted). "[B]ecause there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases," the Eighth Circuit has further held that "a plaintiff must not only prove all the elements of equitable estoppel, but also that the government committed affirmative misconduct." Bartlett, 716 F.3d at 475.

Trail King argues that it has "more than sufficiently allege[d] the elements of an equitable estoppel claim" on the following facts,

> [Trail King] sought and received guidance from the IRS in 2004 that the OLB Trailers were not taxable articles. Relying on that guidance in good faith, Trail King did not collect or remit section 4051 excise tax during the years that followed, nor did it solicit regulatory certifications in connection with the OLB Wholesales due to the TAM. Then, during the 2019 examination, the IRS rejected its guidance and indicated for the first time that the OLB Trailers were taxable.

Doc. 21 at 37; see Doc. 3 at 4–5. Trail King has not alleged that the IRS engaged in the requisite affirmative misconduct. Thus, this Court need not even consider whether Trail King sufficiently alleged the traditional elements of equitable estoppel.

Showing that the United States engaged in affirmative misconduct "is a heavy burden that requires showing more than mere negligence." Bruning v. City of Omaha, 6 F.4th 821, 827 (8th Cir. 2021). Indeed, the Eighth Circuit has rejected equitable estoppel claims where a plaintiff acts on incorrect advice from a government official. See Clason v. Johanns, 438 F.3d 868 (8th Cir. 2006). In Clason v. Johanns, the plaintiff received a marketing assistance loan from the Commodity Credit Corporation, a federal corporation within the United States Department of Agriculture ("USDA"). 438 F.3d at 869–70 (8th Cir. 2006). The loan was secured by 36,000 bushels of corn valued at $1.86 per bushel with a 5.875% interest rate, and the plaintiff agreed not to move the corn from his property. Id. at 870. However, the loan program allowed recipients to discharge the loan at a lower rate if the price of corn dropped. Id. The plaintiff eventually sought

permission from the local Farm Service Agency ("FSA"), an agency of the USDA, to sell and deliver 30,000 bushels of the collateral to his brother. Id. To do so, the plaintiff executed a standardized form titled "Authorization for Delivery of Loan Collateral for Sale" which provided a lower repayment rate of $1.49 per bushel for any quantity "delivered" on or before a certain date. Id. The plaintiff transferred only 8,573 of the bushels to his brother's storage bins and retained possession of the remaining bushels. Id. An FSA employee advised the plaintiff that physical delivery of the collateral was not necessary to be entitled to the repayment rate of $1.49. Id. However, upon learning that plaintiff had not made physical delivery of all the corn to his brother, the FSA determined that the plaintiff owed the full repayment amount. Id. The plaintiff sought review in federal court, arguing that based on the employee's advice that physical delivery was unnecessary, the FSA was estopped from requiring physical delivery of the corn for the plaintiff to be entitled to the lower repayment rate. Id. at 872. The Eighth Circuit rejected the plaintiff's argument, finding that the plaintiff failed to prove any affirmative misconduct and that the USDA's comments were "[a]t most . . .the product of negligence." Id.

Here, Trail King does not allege that the 2004 TAM incorrectly advised Trail King of its tax liability for the taxable periods in 2001 and 2002; indeed Trail King welcomed the 2004 TAM and wishes it to apply post-AJCA changes to the definitions of off-highway vehicle. Trail King also does not allege that the IRS informed Trail King that it could rely on the 2004 TAM in subsequent years after passage of the AJCA or that the IRS instructed Trail King that the OLB Trailers were exempt from federal excise taxes beyond the taxable periods in 2001 and 2002. Indeed, Trail King has not alleged any *affirmative* conduct, let alone affirmative misconduct, on the part of the IRS that Trail King subsequently relied on to its detriment. Rather, Trail King relied on the 2004 TAM in subsequent years under the assumption that it was entitled to do so pursuant

26

to Rev. Proc. 2004-2, § 15.04. But as explained above, Trail King's reliance on the 2004 TAM does not supersede the change in the definition of the off-highway vehicle in the AJCA. To the extent Trail King suggests the IRS had some duty to inform Trail King of its inability to rely on the 2004 TAM and failed to do so, a failure to act is not affirmative misconduct, assuming such a duty exists. See Fisher v. Peters, 249 F.3d 433, 445 (6th Cir. 2001) (stating "a litigant claiming equitable estoppel against the Government must establish . . . more than mere negligence, delay, inaction, or failure to follow an internal agency guideline" (cleaned up and citation omitted)); In re DePaolo, 45 F.3d 373, 377 (5th Cir. 1995) (holding the IRS's failure to advise on the full tax liability was not affirmative misconduct); United States v. McCorkle, 321 F.3d 1292, 1297 (11th Cir. 2003) ("Government inaction does not give rise to an estoppel claim . . . ."). Trail King's estoppel claim fails because it does not allege or even support that the United States committed affirmative misconduct.

### D. Tire Tax Credits, Penalties, and Unexplained Assessment

The United States' Motion to Dismiss does not address claims for a refund based on either tire tax credits or penalties and interest. Accordingly, Trail King argues the United States' motion should be "summarily denied to that extent." Doc. 21 at 37. The United States responds by contending Trail King "essentially folded any claims concerning tire tax credits and penalties into its claims concerning its alleged entitlement to rely on and apply the TAM during each taxable quarter." Doc. 22 at 34.

Trail King has sufficiently stated a claim for a refund based on the tire tax credits. In its Complaint, Trail King alleges that during the 2019 audit, the IRS proposed adjustments which allowed for a tire tax credit under 26 U.S.C. § 4051(d). Doc. 3 at 2. Trail King also alleges that the IRS ultimately withheld $74,400 from refund payments, representing tire tax credits available

to Trail King under § 4051(d). Id. at 6. Trail King alleges that the IRS refunded Trail King approximately $533,637 for overpaid interest and penalties but reduced from the amount tire tax credits for a net refund of $483,875. Id. at 2–3. Trail King subsequently filed its Refund Claims which factored in the tire tax credits. Id. at 7; Doc. 22-1 at 3, 19, 35. Significantly, each of the ten counts in the Complaint corresponds with one of the Taxable Quarters at Issue, and in each count, Trail King seeks a refund amount for the corresponding Taxable Quarter at Issue that incorporates the tire tax credits Trail King alleges were improperly withheld. Id. at 7–11. Trail King's allegations are sufficient to state a claim for a refund of tire tax credits that Trail King alleges were improperly withheld. To the extent Trail King seeks a refund based on the tire tax credits, the United States' motion to dismiss is denied.

Trail King also alleges that the IRS erroneously collected $726,866.48 in penalties and interest during the Taxable Quarters at Issue. Id. at 1, 6. Like with the tire tax credits, each of the ten counts in the Complaint incorporates the penalties and interest that Trail King alleges were erroneously assessed. Id. at 7–11. The Code imposes mandatory penalties on individuals who fail to timely pay certain federal taxes. See 26 U.S.C. § 6651 (imposing penalty for failure to file tax return or pay tax liability); id. § 6656 (imposing penalty for failure to deposit taxes as required); see also Deaton Oil Co., LLC v. United States, 904 F.3d 634, 637 (8th Cir. 2018) (describing the penalties as "mandatory"). "To escape the penalties, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from willful neglect, and (2) that the failure was due to reasonable cause." Id. (citation omitted). Treas. Reg. § 301.6651-1(c)(1) further provides that where a taxpayer fails to pay, reasonable cause may exist if "the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax

liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date."

Here, Trail King has alleged in each count that "Trail King was entitled to . . . apply the 'off-highway' exemption to its sale of the OLB Trailers" during the Taxable Quarters at Issue. Doc. 3 at 7–11. Trail King alleged elsewhere in the Complaint why it believes that is so. Id. at 3–7. Trail King's allegations can be read as alleging that its failure to pay the taxes was not the result of willful neglect but rather reasonable cause. Indeed, Trail King's allegations can be read as claiming that the OLB Trailers remain within the "off-highway" exemption in each of its ten counts. Id. at 7–10.

### E. Assertion Not Pleaded in Complaint

In its opposition to the United States' motion to dismiss, Trail King asserts for the first time that it "learned that Defendant has collected the same excise tax from at least one dealer on some of the very same sales for which Trail King now seeks a refund." Doc. 21 at 38. Because these additional facts were not raised in the Complaint, they "cannot be considered on a motion to dismiss." Glick v. Western Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019) (refusing to consider additional facts raised for the first time in an opposition to a motion to dismiss). Whether that is admissible as evidence on Trail King's sale of certain of the OLB Trailers being subject to the "off-highway" exemption or not being a first retail sale cannot be decided on a motion to dismiss.

### IV.  Conclusion

For the following reasons, it is

ORDERED that the United States' Motion to Dismiss, Doc. 17, is granted in part and denied in part. The motion is granted to the extent that Trail King alleges in Counts One through Ten a

29

right to rely on the 2004 TAM as superseding the change in law in the AJCA and to the extent that

Trail King is alleging waiver, estoppel, or a <u>Loper Bright</u> challenge to Treas. Reg. § 48.4052–1.

DATED this **24**<sup>th</sup> day of July, 2025.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE